## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| Daniel COTTO, JR., | : | |
| | : | |
| Plaintiff, | : | Civil No. 18-1037 (RBK/AMD) |
| v. | : | |
| | : | **OPINION** |
| ARDAGH GLASS PACKING, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KUGLER**, United States District Judge:

Plaintiff Daniel Cotto, Jr. hit his head on a forklift and was subsequently asked to take a drug test as a condition of continued employment. He told his employer, Defendant Ardagh Glass, that he could not pass a drug test because he takes several medically-prescribed drugs, including medical marijuana. Ardagh Glass told him they could not allow him to continue working there unless he tested negative for marijuana, and so he remained on indefinite suspension as a consequence of not satisfying this condition of employment. Plaintiff argues this constitutes disability discrimination. He claims that the decriminalization of medical marijuana under the New Jersey Compassionate Use Medical Marijuana Act ("CUMMA"), together with the New Jersey Law Against Discrimination ("LAD), compels his employer to provide an accommodation for him, which the Court infers can only mean a request that his employer waive the requirement that Plaintiff pass a drug test.

Now this matter comes before the Court on Ardagh Glass's Motion to Dismiss. (ECF No. 6.) As we find that neither the New Jersey Law Against Discrimination nor the New Jersey

Compassionate Use Medical Marijuana Act require an employer to waive a drug test as a condition of employment for federally-prohibited substance, Defendant's Motion to Dismiss is **GRANTED**.

## I.     BACKGROUND

Daniel Cotto, Jr., a New Jersey resident, began working as a forklift operator at Ardagh Glass, a Delaware corporation whose principal place of business is in the State of Indiana, on February 8, 2011. Because of a neck and back injury in 2007, Plaintiff was prescribed drugs for pain management including Percocet, Gabapentin, and—as relevant to this litigation—marijuana. (Compl. at 2.), Plaintiff states that at the time of his hiring, he informed Ardagh Glass about his use of these medications and presented medical documentation showing that it was safe for him to take these medications. (*Id.* at ¶¶ 7–8.)

It came to pass that on November 1, 2016, Plaintiff injured himself by hitting his head on the roof of a forklift. (*Id.* at ¶ 9.) His supervisor told him to take a break in the breakroom, and Plaintiff was subsequently instructed to visit Premier Orthopedics in Vineland, New Jersey, for examination. (*Id.* at ¶ 11.) At Premier Orthopedics, a doctor placed Plaintiff on "light duty" work, with a follow-up appointment set for December 8, 2016. (*Id.* at ¶ 13.) But an Ardagh Glass safety employee also told him that "he was required to pass a breathalyzer and urine test in order to return to work." (*Id.*) Plaintiff explained that he was taking prescription medications, which the safety employee told him would not be a problem. (*Id.* at ¶ 15.) He was also told that there would be no work available to him given his "light duty" restrictions. (*Id.* at ¶ 16.) Other employees with similar restrictions were permitted to perform light-duty work. (*Id.* at ¶ 17.)

On December 1, 2016, Plaintiff received a phone call from an Ardagh Glass employee, "Bryan"—last name unpleaded—who told him that he could no longer work at Ardagh Glass because he could not operate machinery while on narcotics. (*Id.* at ¶ 18.) Plaintiff objected: he had

told Ardagh Glass when he was hired about his prescription medications and his doctor had given him a note stating that he could operate machinery while on these drugs. (*Id.* at ¶¶ 19–20.) Bryan told Plaintiff that Ardagh Glass was not concerned about the Percocet—rather, it was concerned about Plaintiff's use of marijuana. But Ardagh Glass's representative stated that that he would discuss the matter with legal counsel and that he would get back to Plaintiff about it. (*Id.* at ¶ 21.)

The next day Ardagh Glass held a meeting between Plaintiff, Bryan, and "a human resources representative named Jim." (*Id.* at ¶ 23.) Ardagh Glass's representatives asked Plaintiff whether he could work without taking his medications; Plaintiff responded that he could "wean off of the Percocet." (*Id.* at ¶ 24.) But even when told that the "problem" was the medical marijuana and that "corporate wants you fired," Plaintiff demurred, and presented his medical marijuana card and doctor's prescription. (*Id.* at ¶¶ 23–27.) As before, Ardagh Glass representatives told Plaintiff they would look into the matter to see what they could do. (*Id.* at ¶ 28.)

Plaintiff does not plead that he was fired: rather, he appears to be on "indefinite suspension" (*Id.* at ¶ 36) as a result of this episode. Whatever the precise nature of his employment status, Plaintiff maintains he has not been permitted to return to work until he passes a drug test. (*Id.* at ¶ 29.) He argues this constitutes discrimination. Plaintiff's doctor stated Plaintiff had some lifting restrictions because of his medical condition—the complaint does not specify if this medical condition is related to past injuries, the forklift injury, or both—and that he is therefore disabled within the meaning of the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-12 *et seq.* (*Id.* at ¶¶ 31, 33.) Plaintiff avers he is still capable of performing all the essential functions of his job as a forklift operator despite his disability. (*Id.* at ¶ 32.) He simply seeks a "reasonable accommodation," which the Court infers to be a request that his employer waive the

requirement that Plaintiff pass a drug test for marijuana, a substance prohibited by federal law. (*Id.* at ¶ 37.)

Plaintiff first filed this complaint in the Superior Court of New Jersey, Cumberland County, asserting claims of disability discrimination, the "perception of disability discrimination," a failure to accommodate, retaliation, and a request for equitable relief including costs and reinstatement. (Compl. at 6–10.) Ardagh Glass then removed this case by invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332, and has now moved to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted.

## II.  THE 12(b)(6) STANDARD

When considering a motion to dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, this Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809

F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).

## III.    JURISDICTION

This case is properly before the Court under 28 U.S.C. § 1332. The parties are diverse—Plaintiff is a New Jersey citizen and Defendant is a Delaware corporation with a principal place of business in Indiana. The amount of controversy, inclusive of the potential for punitive damages and attorney's fees, could reasonably exceed $75,000. *See Bell v. Preferred Life Assur. Soc. Of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) (punitive damages relevant to determining the amount of controversy); N.J. Stat. Ann. § 10:5-27.1 (The LAD awards attorney's fees to a prevailing party).

## IV.    DISCUSSION

New Jersey is an at-will employment state: an employer may fire an employee for good reason, bad reason, or no reason at all. *See Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 396 (1994). But this is subject to some exceptions, including, as relevant here, unlawful discrimination, which is prohibited by the New Jersey Law Against Discrimination ("LAD"). *See Greenwood v. State Police Training Ctr.*, 127 N.J. 500, 512 (1992).

The LAD forbids "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J. Stat. Ann. § 10:5-4.1. In implementing this provision, New Jersey courts have adopted the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as the starting point in actions brought under the LAD. *See Andersen v. Exxon Co., U.S.A.*, 89 N.J. 483, 492 (1982). The "first step" of this burden-shifting framework requires "the plaintiff to bear the burden

of proving the elements of a prima facie case." *Victor v. State*, 203 N.J. 383, 408, 4 A.3d 126, 140 (2010). The prima face case is a "rather modest" burden, *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005), "but it remains the plaintiff's burden nonetheless." *Victor*, 203 N.J. at 408. Once a plaintiff has established the prima facie case, the burden of proof shifts to the employer who may rebut the presumption of discrimination by providing a legitimate, non-discriminatory reason for the challenged action. *Andersen*, 89 N.J. at 491. After such a rebuttal, the plaintiff may "prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." *Id.* In addition to the pretext theory set forth by *McDonnell Douglas*, a plaintiff may also establish a claim of discrimination under a mixed-motive theory as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (expounding on the two different modes of discrimination).

When deciding whether to grant a motion to dismiss, the Court must evaluate whether Plaintiff has alleged facts that could sustain a *prima facie* case in discovery. This is not a formalistic inquiry: "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." *Connelly*, 809 F.3d at 788. This is because a *prima facie* case is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002). Rather, a plaintiff with a disability discrimination claim may survive a motion to dismiss if he pleads "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of the *prima facie* case. *Connelly*, 809 F.3d at 789.[1]

---

[1] These precedents concern federal discrimination law, of course, but New Jersey courts "rely on the federal courts and their construction for guidance in those circumstances in which our LAD is unclear." *Victor*, 203 N.J. at 398.

"There is no single prima facie case that applies to all employment discrimination claims." *Andersen*, 89 N.J. at 491. Instead, "the elements of the prima facie case vary depending upon the particular cause of action." *Id.* Plaintiff has identified four theories of discrimination, labeled as follows: "Discrimination Based on Disability Under the LAD" (Count I); "Perception of Disability Discrimination Under the LAD" (Count II); "Failure to Accommodate" (Count III); and "Retaliation under the LAD" (Count IV). Count I and II are properly considered together, as Count II merely provides an alternative definition for a motivation prohibited by the statute; it does not present a separate cause of action. *See Rogers v. Campbell Foundry Co.*, 185 N.J. Super. 109, 112 (App. Div. 1982) ("those perceived as suffering from a particular handicap are as much within the protected class as those who are actually handicapped."); *Poff v. Caro*, 228 N.J. Super. 370, 377 (Law Div. 1987) ("discrimination based on a perception of a handicap is within the protection of the Law Against Discrimination.").

Ardagh Glass has moved to dismiss the complaint in its entirety, focusing its arguments on Plaintiff's contention that his past employer was duty-bound to accommodate his use of medical marijuana. Specifically, Ardagh Glass argues that the New Jersey Compassionate Use Medical Marijuana Act ("CUMMA") does not mandate employer acceptance—or, more particularly, to waive a drug test—of an employee's use of a substance that is illegal under federal law. We take each claim in turn.

### A. Discriminatory Discharge

To withstand a motion to dismiss, a complaint must contain "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of a *prima facie* case of discriminatory discharge on the basis of disability. *See Connelly*, 809 F.3d at 789. When a plaintiff alleges he was discriminatorily fired because of a disability, he must prove by a

preponderance of the evidence that: (1) he is disabled within the meaning of the LAD; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was discharged; and (4) the employer sought someone else to perform the same work after he left. *Grande v. Saint Clare's Health Sys.*, 230 N.J. 1, 18 (2017).

Plaintiff has adequately pleaded that he is disabled under the LAD. The LAD "does not require proof that some major life activity was impaired," *Dicino v. Aetna U.S. Healthcare*, Civ. No. 01-3206 (JBS), 2003 WL 21501818, at *12 (D.N.J. June 23, 2003) (citing N.J. Stat. Ann. § 10:5-5(q)), and "courts have found a broad array of medical conditions to be handicaps under the LAD." *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 398 (App. Div. 2002). *See Clowes*, 109 N.J. at 590 (finding that "alcoholism is a protected handicap"); *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 17 (2002) (obesity); *Jansen v. Food Circus Supermarkets, Inc.*, 110 N.J. 363, 374 (1988) (drug addiction). Plaintiff's back and neck pain, as alleged, readily satisfies the standard for physical disability under the LAD. *See, e.g.*, *Andersen*, 89 N.J. at 493 (finding that "a serious back and spinal ailment that warranted an operation requiring spinal fusion and removal of a lumbar disc" could sustain a finding of a "physical handicap" under the LAD).

We turn to the second element of the *prima facie* case: whether Plaintiff was qualified to perform the essential functions of the job. As the New Jersey Supreme Court has explained, "the import of the [LAD] is that the handicapped should enjoy equal access to employment, subject only to limits that they cannot overcome." *Jansen*, 110 N.J. at 374. "Because of the limits imposed by a handicap, the [LAD] must be applied sensibly with due consideration to the interests of the employer, employee, and the public." *Raspa v. Office of Sheriff of Cty. of Gloucester*, 191 N.J. 323, 336 (2007) (citing *Jansen*, 110 N.J. at 374). The LAD leaves employers "with the right to fire or not to hire employees who are unable to perform the job, whether because they are generally

unqualified or because they have a handicap that in fact impedes job performance." *Raspa*, 191 N.J. at 336 (internal marks and citations omitted).

As an initial matter, Plaintiff appears to be qualified to work as a forklift operator: he has done so for a period of five years, apparently without issue until the events giving rise to this litigation. But it bears repeating that Plaintiff's complaint does not claim that Ardagh Glass discriminated against him based on his disability as such (i.e., his neck and back pain). Rather, Plaintiff alleges that his employer discriminated against him by refusing to accommodate his use of medical marijuana by waiving a drug test.

Distinguishing a treatment from a disability can present some analytical difficulties. Undue prejudice toward a treatment for a disability—say, an employer's disapproval that an employee uses a wheelchair—can be discrimination against the disability itself. But not so here. Plaintiff has pleaded that Ardagh Glass was aware of Plaintiff's disability for years and never discriminated against him until he was asked to take a drug test. Nothing in the complaint indicates Ardagh Glass took issue with his disability as such, only with a consequence of his treatment. New Jersey courts interpreting the LAD have noted that "it is the almost universal view that the federal laws are intended to prevent discrimination premised upon a handicap or disability, not upon egregious or criminal conduct *even if such conduct results from the handicap or disability*." *Barbera v. DiMartino*, 305 N.J. Super. 617, 636 (App. Div. 1997) (citing dozens of cases) (emphasis added). What occasioned this dispute is conduct resulting from a treatment, not the disability itself: Plaintiff alleges that Ardagh Glass discriminated against him by telling him "he was required to pass both a breathalyzer and a urine test in order to return to work." (Compl. at ¶ 13.)

In other words, Ardagh Glass had a condition of employment which Plaintiff was unable or unwilling to meet. Plaintiff had to test negative for illegal narcotics or else, according to the

complaint, he would remain on "indefinite suspension." Part of this was a fear that Plaintiff "could not operate machinery while on narcotics" (Compl. at ¶ 18), a concern apparently animating the requirement that Plaintiff pass a breathalyzer and urine test before returning to work. (Compl. at ¶ 13.) Plaintiff's complaint, although less precise than it could be, sweats down to a request for an accommodation to waive the condition that he be required to pass a drug test. Ardagh Glass refused, citing marijuana—but not Plaintiff's concurrent use of Percocet, which, if prescribed, is *not* illegal under federal law. (Compl. at ¶ 26.) As pleaded, Ardagh Glass was unmoved by Plaintiff's possession of a medical marijuana card and a note from his doctor stating that he could operate machinery while taking his prescription drugs. (Compl. at ¶¶ 19, 27.)

The Court is thus presented with the question of whether Ardagh Glass may condition Plaintiff's employment on his passing a drug test, or, formulated in the language of a claim for discriminatory discharge, whether this is an "essential function" of Plaintiff's employment.

Our departure point is the current federal prohibition of marijuana. The Controlled Substances Act provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Congress has classified marijuana as a Schedule I substance, § 812(c), which are scheduled as such "because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Gonzales v. Raich*, 545 U.S. 1, 14 (2005) (citing 21 U.S.C. § 812(b)(1)). By contrast, Percocet, a tradename for the combination of oxycodone/paracetamol, is a Schedule II substance "with a high potential for abuse" that "may not be distributed without a prescription." *See United States v. McKinney*, Crim. No. 09-234, 2010 WL 3364204, at *1 (E.D. Pa. Aug. 24, 2010). Ardagh Glass's more permissive stance toward the

latter instead of the former is thus understandable, as federal law allows Percocet to be used with a prescription but continues to regard marijuana as having no accepted medical use.

New Jersey, along with at least 30 other states, has reached a different conclusion about the medical utility of marijuana. The New Jersey Compassionate Use Medical Marijuana Act ("CUMMA" or the "Act") was enacted in 2010 to decriminalize the use of medical marijuana. The New Jersey legislature found that "[m]odern medical research has discovered a beneficial use for marijuana in treating or alleviating the pain or other symptoms associated with certain debilitating medical conditions." N.J. Stat. Ann. § 24:6I-2(a). The legislature also stated that:

> the purpose of this act is to protect from arrest, prosecution, property forfeiture, and criminal and other penalties, those patients who use marijuana to alleviate suffering from debilitating medical conditions, as well as their physicians, primary caregivers, and those who are authorized to produce marijuana for medical purposes.

N.J. Stat. Ann. § 24:6I-2(e).

Consistent with these purposes, "CUMMA affords an affirmative defense to patients who are properly registered under the statute and are subsequently arrested and charged with possession of marijuana." *State v. Holley*, No. A-5547-15T3, 2017 WL 6492488, at *3 (N.J. Super. Ct. App. Div. Dec. 19, 2017) (citing N.J. Stat. Ann. § 2C:35-18). The Act also shields qualifying users of medical marijuana from civil penalties and other administrative actions. "A qualifying patient, primary caregiver, alternative treatment center, physician, or any other person . . . shall not be subject to any civil or administrative penalty, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a professional licensing board, related to the medical use of marijuana." N.J. Stat. Ann. § 24:6I-6(a). But despite these provisions for immunity,

"[n]othing in this act shall be construed to require . . . an employer to accommodate the medical use of marijuana in any workplace." N.J. Stat. Ann. § 24:6I-14.[2]

By its own terms, the Act decriminalizes and removes the threat of civil sanctions from qualifying users, prescribers, or purveyors of medical marijuana. Nothing within it invalidates Plaintiff's claims or requires an employer to permit the use of medical marijuana in the workplace. Most significantly, it specifically excludes employers from its scope. We therefore agree with Plaintiff that the Act "does not render Plaintiff's claim invalid, nor does it waive the employer's obligations under the LAD." (Opp'n at 7.) We further agree that it "has no other relevance to the facts set forth in plaintiff's Amended Complaint." (Opp'n at 7.) CUMMA is essentially agnostic on Plaintiff's claims.

But just as nothing within CUMMA invalidates Plaintiff's claims, so too does nothing within the Act breathe life into them. Plaintiff cannot aver that CUMMA has no significance to his claims and at the same time aver that the Act's decriminalization of medical marijuana mandates Ardagh Glass to waive drug testing for Plaintiff. Nothing in the cited language supports a finding that CUMMA, working alongside LAD, somehow leads to an emergent, penumbral law. The statutes enact only what they expressly enact or what the New Jersey judiciary has held them to enact. And so far, the courts of New Jersey, or federal courts interpreting the law of New Jersey, have not yet addressed this question. *See, e.g.*, *Cobb v. Ardagh Glass, Inc.*, Civ. No. 17-4399

---

[2] New Jersey's language is much less expansive than several other states. Arizona, for example, explicitly provide protections for users of medical marijuana in the workplace. "Unless a failure to do so would cause an employer to lose a monetary or licensing related benefit under federal law or regulations, an employer may not discriminate against a person in hiring, termination or imposing any term or condition of employment or otherwise penalize a person based upon . . . [a] registered qualifying patient's positive drug test for marijuana components or metabolites, unless the patient used, possessed or was impaired by marijuana on the premises of the place of employment or during the hours of employment." Ariz. Rev. Stat. Ann. § 36-2813. *See also* 35 Pa. Stat. Ann. § 10231.2103; Del. Code Ann. tit. 16, § 4905A.

(RMB/KMW), 2018 WL 585540, at *2 (D.N.J. Jan. 26, 2018) (declining to reach the question of whether "Defendants have no liability for failing to accommodate Plaintiff's marijuana usage" and remanding for lack of complete diversity); *Barrett v. Robert Half Corp.*, Civ. No 15-6245, 2017 WL 4475980, at *2 (D.N.J. Feb. 21, 2017) (dismissing without prejudice because the plaintiff failed to plead that he had requested a reasonable accommodation for his disability).

But even though no court has addressed CUMMA's effects on the LAD, this Court is by no means the first to address the question of whether a statute decriminalizing marijuana imposes obligations that previously were not imposed by a state's civil right statutes. Unless expressly provided for by statute, most courts have concluded that the decriminalization of medical marijuana does not shield employees from adverse employment actions. *See, e.g.*, *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 171 Wash. 2d 736, 748 (2011) (Washington's Medical Use of Marijuana Act "does not regulate the conduct of a private employer or protect an employee from being discharged because of authorized medical marijuana use"); *Casias v. Wal-Mart Stores, Inc.*, 764 F. Supp. 914, 921–22 (W.D. Mich. 2011) ("The fundamental problem with Plaintiff's case is that the [Michigan Medical Marijuana Act] does not regulate private employment. Rather, the Act provides a potential defense to criminal prosecution or other adverse action by the state."), aff'd, 695 F.3d 428 (6th Cir. 2012); *Curry v. MillerCoors, Inc.*, Civ. No. 12-2471 (JLK), 2013 WL 4494307, at *7 (D. Colo. Aug. 21, 2013) (granting motion to dismiss; "discharging an employee under these circumstances is lawful, regardless of whether the employee consumed marijuana on a medical recommendation, at home or off work."); *Garcia v. Tractor Supply Co.*, 154 F. Supp. 3d 1225, 1229 (D.N.M. 2016) (finding New Mexico's medical marijuana law does not "combine" with New Mexico's civil rights statute to require an employer to accommodate medical marijuana).

Plaintiff relies on a dissent in *Ross v. Ragingwire Telecomm., Inc.*, 174 P.3d 200, 209–211 (Cal. 2008), a case that is nearly a carbon copy of this one. Judge Kennard, dissenting, observed that "California's voters . . . when they enacted [California's] Compassionate Use Act, surely never intended that persons who availed themselves of its provisions would thereby disqualify themselves from employment. . . ." *Id.* But this Court finds the majority in *Ross* to be much more persuasive. The plaintiff in *Ross*, like the plaintiff in this case, experienced lower back pain and used marijuana to treat that pain. That use, however, brought "plaintiff into conflict with defendant's employment policies" which "den[ied] employment to persons who test positive for illegal drugs." *Id.* at 204. Just as here, the plaintiff's complaint did not "identify the precise accommodation defendant would need to make in order to enable him to perform the essential duties of his job," but the Supreme Court inferred that he was asking "defendant to accommodate his use of marijuana at home by waiving its policy requiring a negative drug test of new employees." *Id.* The *Ross* plaintiff contended that terminating "an employee who uses a medicine deemed legal by the California electorate upon the recommendation of his physician" violated the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*, which prohibits discrimination against the disabled in substantially the same manner as New Jersey's LAD. *See Ross*, 174 P.3d at 204.

The California Supreme Court disagreed with Plaintiff that his employer had to accommodate his drug use. It noted:

> Plaintiff's position might have merit if the Compassionate Use Act gave marijuana the same status as any legal prescription drug. But the act's effect is not so broad. No state law could completely legalize marijuana for medical purposes because the drug remains illegal under federal law even for medical users . . . Instead of attempting the impossible . . . California's voters merely exempted medical users and their primary caregivers from criminal liability under two specifically designated state statutes. Nothing in the text or history of the Compassionate Use

Act suggests the voters intended the measure to address the respective rights and obligations of employers and employees.

*Ross,* 174 P.3d at 204 (citations omitted). The Court concluded that "FEHA does not require employers to accommodate the use of illegal drugs" and noted that the dearth of case law was because "the point is perhaps too obvious to have generated appellate litigation." *Id.*

This Court predicts that the New Jersey judiciary would reach a similarly obvious conclusion: the LAD does not require an employer to accommodate an employee's use of medical marijuana with a drug test waiver. Although no court has expressly ruled on this question, New Jersey courts have generally found employment drug testing to be unobjectionable in the context of private employment. In *Vargo v. Nat'l Exch. Carriers Ass'n, Inc.*, 376 N.J. Super. 364, 383 (App. Div. 2005), the court noted that "where an employer was presented with a positive drug test result for a prospective employee, there was nothing improper or unlawful in the employer's perceiving the prospective employee as a user of illegal drugs." *See also Matter of Jackson*, 294 N.J. Super. 233, 236 (App. Div. 1996) (affirming decision removing firefighter from his job on the basis that an "employer is not required to assume—or hope—that the employee will limit alcohol and other drug consumption to off-duty hours, or that the effects of drugs will be dissipated by the time the work day begins"); *Small v. Rahway Bd. of Educ.*, Civ. No. 17-1963, 2018 WL 615677, at *4 (D.N.J. Jan. 26, 2018) (finding that applicant for custodial position who failed drug test "was not otherwise qualified to perform the essential functions of the custodial job" under the ADA). And as we have seen, nothing in CUMMA or LAD disturbs this regime.

The Court notes that both parties cite past, pending, and future proposed legislation concerning the scope and status of legalized medical marijuana in New Jersey when arguing that the statute should be construed this way or that. This is completely irrelevant. Proposed amendments are just that: proposals. A legislature may refuse to enact a proposal just as swiftly as

someone might turn down a wedding ring. "Judges interpret laws rather than reconstruct legislators' intentions. Where the language of those laws is clear, we are not free to replace it with an unenacted legislative intent." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 453 (1987) (Scalia, J., concurring). This is doubly true for laws that have not even been enacted.

The Court's decision today is a narrow one, as it must be for the narrow issue presented by Plaintiff's complaint. Plaintiff's discrimination claims turn entirely on the question of whether he can compel Ardagh Glass to waive its requirement that he pass a drug test. It is plain that CUMMA does not require Ardagh Glass to do so. We therefore find that Plaintiff has failed to show that he could perform the "essential functions" of the job he seeks to perform. Ardagh Glass is within its rights to refuse to waive a drug test for federally-prohibited narcotics.

The Court also notes that although Plaintiff has stated he "is aware of other employees with restrictions that were permitted to work light-duty positions" (Compl. at ¶ 17), he has not pleaded that other similarly-situated employees asked for the accommodation he requests—i.e., a drug test waiver—and were denied. This, too, provides a basis for dismissal of his complaint, and he must show that Ardagh Glass "sought someone else to perform the same work, or did fill the position with a similarly-qualified person." *Tourtellote*, 636 F. App'x at 848. There are broader formulations of this element as well. Some courts interpreting the LAD have construed it as requiring "a showing that the challenged employment decision . . . took place under circumstances that give rise to an inference of unlawful discrimination." *Williams v. Pemberton Twp. Pub. Sch.*, 323 N.J. Super. 490, 502, 733 A.2d 571, 578 (App. Div. 1999). But even under this approach, Plaintiff has not pleaded that another similarly-situated coworker was subject to the same actions.

**B. Failure to Accommodate and Retaliation Claims**

Plaintiff's other claims fare no better. To present a prima facie case of a failure to accommodate claim under the LAD, Plaintiff must plead that (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist; and (4) the employee could have been reasonably accommodated. *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006); *Vicinage 13 of Superior Court*, 351 N.J. Super. at 396. As we found above with respect to Plaintiff's discriminatory discharge claim, neither CUMMA nor the LAD require Ardagh Glass to waive its drug test as a condition for employment. Plaintiff cannot compel an employer to waive a drug test as an accommodation for an employee using marijuana, and so Plaintiff has failed to state a claim for a failure to accommodate.

Plaintiff's retaliation claim is even more attenuated. To sustain a prima facie case on a retaliation claim under the LAD, Plaintiff must demonstrate that (1) he engaged in a protected activity known by the employer; (2) he suffered an adverse employment action; and (3) his participation in the protected activity caused the retaliation. *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623 (1995). As refusing to take a drug test is not a protected activity under New Jersey law, Plaintiff has failed to state a claim for retaliation.

**V.    CONCLUSION**

New Jersey law does not require private employers to waive drug tests for users of medical marijuana. We therefore find that Plaintiff has failed to state a claim. Defendant's motion is **GRANTED**. An order follows.

Dated:    August 10, 2018                         /s Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge